IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| LEWIS POWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:23-cv-01320 |
| | ) | |
| CITY OF LA VERGNE, TENNESSEE, | ) | JUDGE CAMPBELL |
| ET AL., | ) | MAGISTRATE JUDGE FRENSLEY |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court are motions for summary judgment filed by Defendants Burrel

Davis (Doc. No. 32) and City of La Vergne, Jason Cole, and Andrew Patton ("City Defendants")

(Doc. No. 36). Plaintiff Lewis Powell filed a response in opposition (Doc. No. 47) and Defendants

filed replies (Doc. Nos. 52, 54).

Powell also filed a motion for partial summary judgment (Doc. No. 43), and Defendants

filed responses in opposition (Doc. Nos. 48, 50).

For the reasons discussed below, Defendants' motions (Doc. Nos. 32, 36) are **GRANTED**

and Powell's motion (Doc. No. 43) is **DENIED**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Powell is an African American former K9 sergeant in the La Vergne Police Department

("LVPD").[1] (City Def. SOF ¶ 1). In the spring of 2022, Powell began a relationship with patrol

---

[1]     Defendant Burrel Davis's Statement of Undisputed Material Facts (Doc. No. 34), together with
Powell's response (Doc. No. 46), is cited as "Def. Davis SOF ¶ ____" and the City Defendants' Statement
of Undisputed Material Facts (Doc. No. 38), together with Powell's response (Doc. No. 46) is cited as "City
Def. SOF ¶ ____"). Powell's Statement of Additional Undisputed Material Facts (Doc. No. 46), together
with Defendants' responses (Doc. Nos. 53, 55), is cited as "Pl. SOF ¶ ____."

officer Maegan Hall. (*Id.* ¶ 2). Both Powell and Hall were married and living with their respective spouses during the relationship. (*Id.* ¶ 3). On December 12, 2022, Mayor Jason Cole received information that several officers were engaged in sexual relationships with one another and that a "girls-gone-wild" party had occurred. (*Id.* ¶ 6). Cole informed Andrew Patton, the City's HR Director. (*Id.* ¶ 7). Patton conducted an investigation into the allegations because they involved "core HR concerns." (*Id.* ¶ 8).

The first witness interviewed during the investigation named numerous officers that were rumored to be having sexual relationships with Hall, including Powell. (City Def. SOF ¶ 10; Def. Davis SOF ¶¶ 27-30). At the time of the investigation, Burrel Davis was the Chief of Police at the LVPD. (Def. Davis SOF ¶¶ 1, 3). As Chief of Police, Davis was responsible for ensuring that LVPD officers followed City policies. (*Id.* ¶ 6).

Davis and Patton interviewed Powell on December 13, 2022. (City Def. SOF ¶ 11; Def. Davis SOF ¶ 31). Powell signed a written *Garrity* warning that specified that he was required to answer the questions "fully and truthfully." (City Def. SOF ¶ 13). Powell was also advised that the investigation was subject to open records law and understood that because he worked for the City, citizens could request records related to its operation. (City Def. SOF ¶¶ 14, 15). Patton informed Powell that the investigation related to the City's policy on intimate relationships between employees and its potential impact on work and that Patton was concerned about employees' conduct on City property during work. (City Def. SOF ¶ 16).

In his first interview, Powell denied any involvement with Hall. (City Def. SOF ¶¶ 18-21; Def. Davis SOF ¶ 32). Powell also denied engaging in sexual conduct with Hall on City property. (City Def. SOF ¶¶ 20-21; Def. Davis SOF ¶ 33). At the time of Powell's first interview, Patton and

Davis had an eyewitness account of Powell and Hall alone at the LVPD substation. (City Def. SOF ¶ 23; Def. Davis SOF ¶ 34).

Following his first interview, the City placed Powell on administrative leave with pay and Patton told Powell not to speak to any LVPD officers about the ongoing investigation in order to protect the integrity of the investigation and prevent any influence on the testimony of others involved in the investigation. (City Def. SOF ¶¶ 24, 25; Def. Davis SOF ¶¶ 35-36). The next day, Powell talked to Ty McGowen, a fellow sergeant at LVPD, and discussed the investigation. (City Def. SOF ¶¶ 27-30).

While on administrative leave, Powell also talked to Hall about the investigation and instructed her to lie about their relationship and to deny that she had a relationship with him. (City Def. SOF ¶¶ 32-36; Def. Davis SOF ¶¶ 38-41). Hall was subsequently interviewed as part of the investigation and denied her relationship with Powell in her first interview. (City Def. SOF ¶¶ 37-39; Def. Davis SOF ¶ 42). However, Hall was interviewed a second time on December 21, 2022 and admitted that she had been in a relationship with Powell. (City Def. SOF ¶¶ 40-41; Def. Davis SOF ¶ 43). Hall informed Patton and Davis that she and Powell had numerous sexual encounters and that at least one sexual encounter occurred on City property while on duty. (City Def. SOF ¶ 42; Def. Davis SOF ¶¶ 45-46). Powell was interviewed a second time and admitted that he had a relationship with Hall and that he had lied about it in his first interview. (City Def. SOF ¶ 50; Def. Davis SOF ¶¶ 47-48(a)). Powell confirmed that he had engaged in sexual activity with Hall on City property and admitted talking to both McGowen and Hall during the investigation. (City Def. SOF ¶¶ 51-53).

At the conclusion of the investigation, Patton documented his findings in a written report and recommended termination of Powell for violating multiple City policies and LVPD rules as

set forth in LVPD's General Order 300.01, including sexual activity while on duty, conduct unbecoming of an officer, and lying during the investigation. (City Def. SOF ¶¶ 60-61). Patton also recommended termination of four other officers, each of whom were found to have violated LVPD policies regarding neglect of duty and truthfulness. (City Def. SOF ¶ 65). Patton recommended terminating any officer found to have had sex on duty and/or who was untruthful during the investigation. (City Def. SOF ¶ 66). On January 4, 2023, the City terminated Powell based on the policy violations included in the investigation report. (City Def. SOF ¶¶ 73-74; Def. Davis SOF ¶ 48(b); Doc. No. 35-8 at 14, 16).

On January 6, 2023, the City received a public records request for records related to the officers' discipline and the investigation and released information about the investigation. (City Def. SOF ¶¶ 79, 81; Def. Davis SOF ¶ 49).

Powell brings claims against all Defendants under 42 U.S.C. § 1983 for violation of his informational right to privacy by disclosing details of the investigation to the public and against Defendants Patton, Davis, and the City for abridging his freedom of speech by prohibiting him from talking to others about the investigation. Powell also brings claims against the City Defendants under 42 U.S.C. § 1983 for violation of his right to the freedom of intimate association and violation of equal protection. Additionally, Powell brings a state law libel claim against Cole and Patton.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The summary judgment movant has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine

4

dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III.     ANALYSIS

#### A. Informational Right to Privacy (Count I)

Powell brings a claim under 42 U.S.C. § 1983 against all Defendants for violating his informational right to privacy by investigating his sexual activities, making the details of the investigation a public record, and releasing the information in response to a public records request. Powell and Defendants filed cross-motions for summary judgment on the informational right to privacy claim.

"A prima facie case under § 1983 has two elements: (1) the defendant must be acting under the color of state law, and (2) the offending conduct must deprive the plaintiff of rights secured by

5

federal law. To succeed on a § 1983 claim against a local government, the plaintiff must also prove that the injury about which she complains was caused by an unconstitutional government policy or custom." *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008) (citation modified).

Moreover, "[t]he Supreme Court has identified two types of interests protected by the substantive due process right to privacy. The first is the interest in making certain kinds of important decisions independently (for example, those relating to procreation, marriage and contraception). The second is the interest in avoiding disclosure of personal matters (otherwise known as the informational-privacy right)." *Summe v. Kenton Cnty. Clerk's Office*, 604 F.3d 257, 270 (6th Cir. 2010) (citation modified). Further, "the Sixth Circuit has construed the right to information privacy narrowly. The Sixth Circuit … has developed and applied a different approach to assessing informational privacy claims that requires that the asserted privacy interest implicate a fundamental right." *Lambert*, 517 F.3d at 442; *see also Wilson v. Collins*, 517 F.3d 421, 429 (6th Cir. 2009) ("[T]he Sixth Circuit has held that the Constitution does not encompass a general right to nondisclosure of private information. Instead, the Sixth Circuit has continued to restrict the right of privacy to those rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.'") (citation modified). Accordingly, "the Sixth Circuit has identified an informational-privacy interest of constitutional dimension only in very limited circumstances: 1) where the release of personal information could lead to bodily harm; and 2) where the information released was of a sexual, personal, and humiliating nature." *Gold v. City of Sandusky*, No. 3:15 CV 2001, 2018 WL 1468992 at *13 (N.D. Ohio Mar. 26, 2018) (citation modified). "Only after a fundamental right is identified should the court proceed to the next step of the analysis – the balancing of the government's interest in disseminating the information against the individual's interest in keeping the information private." *Lambert*, 517 F.3d at 440.

Here, Davis argues that he did not violate Powell's right to privacy because adultery does not automatically fall within the purview of constitutional protection, Powell did not have a reasonable expectation of privacy for his conduct, and Davis does not have control over records requests made to the City and had no involvement in responding to the request or the release of the investigation files to the public or media. Similarly, the City Defendants argue that Powell fails to establish a fundament right in "sexual conduct that is not purely private, compromised job performance, and threatened to impact the department's morale and reputation." (Doc. No. 37 at 12). Defendants argue that the casual nature of Powell's relationship with Hall and that the two were married and living with other people at the time of their relationship places it outside of constitutional protection. Defendants also contend that releasing information related to the investigation in response to a public records request does not implicate the right to informational privacy and that Powell was found to have engaged in sexual conduct on duty and on City property negates any privacy right.

In response, Powell contends that he had a right to keep details of his relationship with Hall private and that Defendants fail to offer any compelling reason for disclosure. Moreover, Powell argues that "[t]o be clear, part of the Plaintiff's claim is not just that the Defendants complied with the Public Records Act after the investigation was over, but also that they embarrassed the Plaintiff by generating the records when starting the investigation in the first place" and that Defendants did not have a "concrete reason" to launch the investigation other than "satisfying curiosity." (Doc. No. 45 at 3; Doc. No. 47 at 5). Powell also argues that the investigation details released by Defendants were of a sexual nature and garnered widespread attention.

Powell relies on the reasoning in *Bloch v. Ribar* to support his argument that he had an informational right to privacy regarding his relationship with Hall. 156 F.3d 673, 684-86 (6th Cir.

1998). In *Bloch*, the Sixth Circuit held that an individual's "sexuality and choices about sex, in turn, are interests of an intimate nature which define significant portions of our personhood" and that "[p]ublically revealing information regarding these interests exposes an aspect of our lives that we regard as highly personal and private" and that "for many of these reasons, a number of our sister circuits have concluded that information regarding private sexual matters warrants constitutional protection against public dissemination." *Id.* at 685.

Notably, the analysis in *Bloch* hinged on an individual's right to privacy regarding *private* sexual matters. In the present case, the evidence in the record establishes that Powell's engaged in sexual conduct on City property and that Patton determined Powell and Hall engaged in sexual conduct while on duty. Nonetheless, construing the facts in the light most favorable to Powell, the Court finds that a reasonable juror could find that Powell had a right to informational privacy in the details of his relationship with Hall. Accordingly, the Court will weigh Defendants' interest in disseminating the information against Powell's privacy interest.

The Tennessee Public Records Act "provides citizens of Tennessee with broad access to records of Tennessee governmental agencies" and "hold[s] government officials and agencies accountable to the citizens of Tennessee through oversight in government activities." *Patterson v. Convention Ctr. Auth.*, 421 S.W.3d 597, 605 (Tenn. Ct. App. 2013) (citation omitted); *Tennessean v. Metro. Gov't of Nashville & Davidson Cty.*, 485 S.W.3d 857, 864 (Tenn. 2016). "The Tennessee Public Records Act states that, except as provided, 'all state, county and municipal records … shall at all times, during business hours, be open for personal inspection by any citizen of Tennessee, and those in charge of such records shall not refuse such right of inspection to any citizen, unless otherwise provided by state law.'" *Doe v. Briley*, 511 F. Supp. 2d 904, 926 (M.D. Tenn. 2007) (citing Tenn. Code Ann. § 10-7-503(a)). Courts are required to construe the TPRA broadly "so as

8

to give the fullest possible access to public records." Tenn. Code Ann. § 10-7-505(d). "The TPRA has been described as an all encompassing legislative attempt to cover all printed matter created or received by government in its official capacity." *Id.* (citation modified). "The TPRA creates a presumption of openness and expresses a clear legislative mandate favoring disclosure of government records." *Id.* (citation modified).

The City Defendants contend that they had a compelling interest in investigating Powell's relationship with Hall given the potential impact on the LVPD's morale and performance, particularly concerning allegations that sexual conduct occurred among officers on duty and on City property, and that they had a strong interest in ensuring there was not any harassment or conflicts of interest involved in relationships between officers. Defendants also argue that they had a compelling interest in disclosing information about the investigation in response to the public records request as there was no applicable TPRA exception and citizens have a right to know about work-related misconduct of law enforcement officers. The Court agrees.

Defendants had an interest in complying with the Tennessee Public Records Act, including by providing information related to the investigation and the alleged misconduct of LVPD officers, some of which undisputedly occurred while on City property. Defendants also had an interest in ensuring the effectiveness and efficiency of the LVPD and in ensuring that there were no conflicts of interest or allegations of harassment regarding relationships amongst officers as that could have an impact on the operations and effectiveness of the LVPD. Moreover, Defendants' interest in disclosing the details of the investigation outweighed Powell's interest in keeping the details of the investigation private, as Defendants had a compelling interest in conducting the investigation as it related to LVPD employees and its impact on the department, and the public had a right to

9

information about the investigation and alleged misconduct of public employees as it related to the efficiency and effectiveness of the LVPD.

It is also worth noting that Powell was informed during the investigation that if a public records request was made after the investigation concluded, the contents of the investigation would be publicly disclosed. (Doc. No. 35-9 at 1) ("When the investigation is complete, obviously, as a municipality we are subject to open records. So, I always like to tell people and explain, everything is confidential uh, until we're completed and at that point if somebody does an open record request, it is discoverable."). Moreover, Powell has failed to identify any exception to the TPRA justifying non-disclosure of the investigation.[2]

The Court finds that no reasonable juror could determine that Powell's privacy rights outweighed Defendants' compelling interests in disclosing the investigation, interests that require disclosure absent an exception. Accordingly, even construing the facts in the light most favorable

---

[2]    Tenn. Code Ann. § 10-7-504(g)(1)(A)(i) states that "[a]ll law enforcement personnel information in the possession of any entity or agency in its capacity as an employer, including officers commissioned pursuant to § 49-7-118, shall be open for inspection as provided in § 10-7-503(a), except personal information shall be redacted where there is a reason not to disclose as determined by the chief law enforcement officer or the chief law enforcement officer's designee. (ii) When a request to inspect includes personal information and the request is for a professional, business, or official purpose, the chief law enforcement officer or custodian shall consider the specific circumstances to determine whether there is a reason not to disclose and shall release all information, except information made confidential in subsection (f), if there is not such a reason. In all other circumstances, the officer shall be notified prior to disclosure of the personal information and shall be given a reasonable opportunity to be heard and oppose the release of the information. Nothing in this subdivision (g)(1) shall be construed to limit the requestor's right to judicial review set out in § 10-7-505." Moreover, Tenn. Code Ann. § 10-7-503 (c)(1) states that "[e]xcept as provided in § 10-7-504(g), all law enforcement personnel records shall be open for inspection as provided in subsection (a); however, whenever the personnel records of a law enforcement officer are inspected as provided in subsection (a), the custodian shall make a record of such inspection and provide notice, within three (3) days from the date of the inspection, to the officer whose personnel records have been inspected:(A) That such inspection has taken place; (B) The name, address and telephone number of the person making such inspection; (C) For whom the inspection was made; and (D) The date of such inspection."

10

to Powell, no genuine issue of material fact exists as to the informational privacy claim, and summary judgment in favor of Defendants is appropriate on this claim.[3]

## B. Freedom of Intimate Association (Count II)

Powell also asserts a 42 U.S.C § 1983 claim against the City Defendants for violating his right to the freedom of intimate association by terminating him for engaging in a sexual relationship with Hall.

"The Constitution protects two distinct types of association: (1) freedom of expressive association, protected by the First Amendment, and (2) freedom of intimate association, a privacy interest derived from the Due Process Clause of the Fourteenth Amendment but also related to the First Amendment." *Pleasant View Baptist Church v. Beshear*, 78 F.4th 286, 301 (6th Cir. 2023) (internal citation omitted). "Under the right to intimate association, choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State." *Id.* (citation modified). The Sixth Circuit has recognized that "while there are relationships other than those between family members that may be afforded constitutional protection, it does not follow that *any* relationship that could be objectively qualified as intimate should be protected." *Medlin v. City of Algood, Tennessee*, 814 F. App'x 7, 18 (6th Cir. 2020) (citation modified). Moreover, "whether a particular relationship is protected by the Constitution depends on its characteristics" and "[t]o determine the limits of state authority over an individual's freedom to enter into a particular association, it is the task of the court to engage in a careful assessment of

---

[3]     Notably, Plaintiff cites to *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1064-65 (6th Cir. 1998) in support of his argument that Defendants' public disclosure of information about the investigation was not justified. In *Kallstrom*, the court held that a records request does not justify releasing information that would place an officer's life in danger. The facts of *Kallstrom* are clearly distinguishable from the present case, as here, neither party contends – nor does a thorough review of the record reflect – that Defendants' release of information about the investigation placed Powell or anyone else's lives in danger.

11

where that relationship's objective characteristics locate it on a spectrum from the most intimate to the most attenuated of personal attachments, taking into consideration factors that may include size, purpose, policies, selectivity, congeniality, and other characteristics that may be pertinent." *Id.* (citation modified). Moreover, "while the exact boundaries of this type of constitutional protection [are] not marked, it is not restricted to relationships among family members" as "protection is afforded to those relationships that presuppose deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." *Id.* (citation modified).

The Sixth Circuit "use[s] a retaliation framework to evaluate [a plaintiff's] claim that he was fired because he exercised a right of intimate association." *Dade v. Baldwin*, 802 F. App'x 878, 882 (6th Cir. 2020). "For a retaliation claim to survive summary judgment, the plaintiff must establish a genuine dispute of material fact as to three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two, that is, the defendants' adverse action was substantially motivated by the exercise of the plaintiff's constitutional rights." *Medlin*, 814 F. App'x at 18 (citation modified). "The plaintiff bears the burden of establishing a causal connection between the protected conduct and the adverse action." *Dade*, 802 F. App'x at 882 (citation modified). When considering whether the plaintiff has met his burden, courts "are concerned with the subjective motivation of the defendants." *Id.* Moreover, "[o]nce the plaintiff has met his burden, ... the burden of production shifts to the defendant to show that he would have taken the same action in the absence of the protected activity. If the defendant can show that he would have taken the same

action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id.* (citation modified).

Here, the City Defendants contend that Powell's relationship with Hall is not protected under the constitutional right of intimate association because Powell described the relationship as "transactional," "just sex" and "he did not have any special affection for Ms. Hall." (Doc. No. 37). However, the record also establishes that Powell's relationship with Hall was months-long and Powell testified during his deposition that he and Hall "had a common interest as in we both had relationship problems so that drew us together" and that he would "call her when I wanted to or had an issue" and that Hall "sometimes" talked to him about problems she was having in her marriage. (Doc. No. 37-14 at PageID # 848, 849, 903). Similarly, Hall informed Patton and Davis during the investigation that Powell "claims he gives me relationship advice for my marriage and he goes the extra mile to help me out at work" and told her that he "wouldn't be doing this if we didn't have a relationship like we do." (Doc. No. 37-4 at PageID # 544). Hall also stated that upon learning she was involved with someone else, Powell ended their relationship and told her that he "thought [she] cared about [him]" and that "[she] really hurt [him]." (Doc. No. 37-4 at PageID # 545). Construing the facts in the light most favorable to Powell, the Court finds that a reasonable juror could find that Powell's relationship with Hall falls within the constitutional right of freedom of intimate association.

The City Defendants next contend that even if Powell's relationship with Hall is protected conduct, Powell cannot establish a causal connection between his termination and the exercise of his intimate association. The Court agrees. Patton's written report regarding the investigation recommends Powell's termination based on multiple policy violations, including neglect of duty, unbecoming conduct of a police officer, intimidation with intent to interfere with investigation,

13

and truthfulness. (Doc. No. 37-6 at 16). Moreover, during the investigation, Patton advised Powell that "when it comes to relationships on the shift, things that happened outside of work is none of my business" and that "[o]ur handbook specifically talks about um the fact that when there are relationships within the department that become intimate, personal, anything like that, that has- could affect work - then it becomes a city issue. Especially, if the people have not disclosed the relationship, right." (Doc. No. 37-3 at PageID # 470). The record also establishes that Defendant Cole terminated Powell based on Patton's recommendations and findings that Powell had committed multiple policy violations. (Doc. No. 37-6 at 20; Doc. No. 37-16 at PageID # 931; Doc. No. 37-15 at PageID # 922-923). There is also evidence in the record that other law enforcement officers were investigated but not terminated because they did not violate the same policies as Powell. (Doc. No. 37-6 at 14-20; Doc. No. 37-14 at PageID # 891). The Court finds that the City Defendants have established the absence of disputes of fact as to whether Powell's termination was substantially motivated by Powell's exercise of his right to intimate association and that no reasonable juror could find otherwise.

Accordingly, summary judgment is appropriate on the freedom of intimate association claim.

## C. Abridging Freedom of Speech Claim (Count III)

Powell next asserts a 42 U.S.C. § 1983 claim against Patton, Davis, and the City for violating his freedom of speech by instructing him not to talk about the ongoing investigation and by later disciplining him for doing so. Powell's freedom of speech allegations encompass claims for both prior restraint and retaliation under the First Amendment. The Court will address each in turn.

14

1. <u>Prior Restraint</u>

"The First Amendment (as incorporated by the Fourteenth) prohibits state actors from abridging the freedom of speech." *Reguli v. Russ*, 109 F.4th 874, 880 (6th Cir. 2024). When considering a prior restraint claim regarding speech of a government employee, the Sixth Circuit (1) first determines whether the issue is one of private or public concern and (2) if the speech addresses a matter of public concern, balances the interest of the Government "in promoting the efficiency of the public services it performs through its employees" against "the interests of the employee, as a citizen, in commenting upon matters of public concern." *Farhat v. Jopke*, 370 F.3d 580, 593 (6th Cir. 2004) (citation modified). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 589 (citation modified). The Sixth Circuit has recognized that "[s]peech is of public concern if it involves issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government[;] [t]he fact that the public employee engages in the speech while in the course of his or her employment does not preclude a finding that the speech touches upon a matter of public concern[;] [t]he employee's motive for engaging in the speech in question is a relevant, but not dispositive, factor when considering whether an employee's expression is of public concern[;] [and] although First Amendment protection might not be available if the employer can show that the public employee knowingly or recklessly made false statements, a public employee is not required to prove the truth of his or her speech in order to secure the protections of the First Amendment." *Id.* (citation modified).

Here, Defendants argue that Powell cannot show that he sought to speak on a matter of public concern. Patton and the City contend that when Powell spoke with officers McGowen and

Hall regarding his involvement in the investigation, he was only aware of its impact on him and Hall and was not aware of its scope and overall impact on the City, so Powell's interest in speaking about the investigation involved was a personal matter.

Construing the facts in the light most favorable to Powell, the Court finds that a reasonable juror could find that Powell's statements regarding the investigation constitute speech on a matter of public concern, including statements related to sexual conduct while on duty and on city property, allegations related to conduct of other LVPD officers, and communications between officers while on duty and on City property.

Accordingly, the Court will weigh Powell's right to privacy against Defendants' interest in the efficiency of the LVPD. Davis argues that it investigated Powell due to his status as a public employee and that Powell would not have been investigated or told not to speak about the investigation if he wasn't a public employee. Defendants also argue that the City has a compelling interest in personal relationships between employees and the efficient and effective operation of the LVPD.

The record establishes that Defendants had an interest in the efficient and effective operation of the LVPD, that the purpose of the investigation was to ensure that LVPD officers were acting in accordance with City and department policies and carrying out their duties as law enforcement officers, and that Defendants' instruction to Powell to not speak to other police officers about the investigation while it was ongoing was for the purpose of protecting the integrity of the investigation. (Doc. No. 35-9 at 12) ("When it comes to anything off work, no judgement zone, because I don't care… Only thing I care about is when it starts affecting what happens here at work."); (Doc. No. 35-9 at 21) ("You know, you do what you do, fine, it is what it is. The issue that I have…it happened on duty. Off duty, I could care less. Because in my-in my side of the

fence, City policy says as long as it's made known, you could have come at me as Chip and say 'hey' that's making it known, okay. And then when this investigation come out and he asked me, 'Did you know Lewis Powell and Meagan Hall was together?' Yes. That satisfies policy. 'What did you do?' I counseled them, I said 'Hey, I don't care what y'all do on your off time, as long as it doesn't come back to work.' Wrote it down, kept it in my files. That would have satisfied all of that. But…you lied to me and you didn't have to do that… you lied to me because this is the department that I'm over and you didn't have to do that. We-we could have gotten through all of this but you compounded by-you compounded-I guess I can't call it a mistake, but you compounded that by-by lying and you didn't have to."); (Doc. No. 35-6 at 39) ("the reason why I say I'm disappointed about it on duty is because our job is to provide the best law enforcement service that we can for the community and that wasn't it.").

The record also shows that Defendants' instruction for Powell to not speak about the investigation did not include a blanket ban and that Powell could talk about the investigation to his wife. (Doc. No. 37-3 at PageID # 480) ("[Y]ou tell your wife whatever you need to tell your wife, I'm not going to get into that part of it."); (Doc. No. 37-3 at PageID # 490) ("Um, same-same parameters, you can't be at anything Police or City related, can't talk to anybody at the City, I-honestly don't believe that you'll follow that, but that.. That is the guidance."). Powell also testified that he understood that the reason he was told not to speak about the investigation was because he could "corrupt somebody to say something" and that he "can see how it could have" impacted the outcome of the investigation if he spoke to other officers about the investigation while it was ongoing. (Doc. No. 37-14 at PageID # 863-864) ("Q. You understood what he said, but what is your understanding of why you were told not to speak about the investigation itself? A. Well, now? I guess can corrupt somebody to say something. Q. There was concern about potential influencing

other people's testimony within the investigation, right? A. Yes. Q. In other words, you wanted to prevent some sort of undue influence on the investigation, right? A. Yes. Q. Do you see how that can happen where people are trying to coordinate stories or anything that can go through and potentially change the outcome of the investigation? A. I can see how it could have.").

The Court finds that Defendants had a compelling interest in prohibiting Powell from talking about the ongoing investigation particularly in light of Powell's attempts to convince Hall to lie to investigators about Powell's relationship with Hall – which Powell did after he was instructed not to talk about the investigation.

Even construing the facts in the light most favorable to Powell, the Court finds that no issue of genuine material fact exists regarding the freedom of speech claim and that no reasonable juror could find that Davis violated Powell's freedom of speech by instructing him not to talk about the investigation while it was ongoing, particularly in light of Powell's attempts to obstruct the investigation and instructing Hall to lie to investigators. Accordingly, summary judgment is granted on the prior restraint claim.

2. Retaliation

Powell also alleges that he was retaliated against for speaking about the ongoing investigation. "A First Amendment retaliation claim has three elements: (1) the plaintiff engaged in protected conduct [*i.e.*, constitutionally protected speech]; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) ... the adverse action was motivated at least in part by the plaintiff's protected conduct." *Myers v. City of Centerville, Ohio*, 41 F.4th 746, 759 (6th Cir. 2022) (internal citation omitted).

18

Patton and the City argue that Powell cannot establish that he engaged in protected speech. For the reasons set forth above, the Court finds that a reasonable juror could find that Powell's speech regarding the investigation and his relationship with Hall is protected. Patton and the City next argue that even if Powell's speech is protected, Powell cannot establish a "but-for" causation between his termination and his protected speech because Defendants would have terminated Powell in the absence of any protected conduct based on the findings and policy violations set forth in Patton's written investigation report. As discussed above, the record establishes that Patton recommended Powell's termination based on multiple policy violations, including neglect of duty, unbecoming conduct of a police officer, intimidation with intent to interfere with investigation, and untruthfulness. (Doc. No. 37-6 at 16). The record also demonstrates that the other officers whom were investigated but not terminated did not violate the same policies as Powell, and that each LVPD officer found to have lied during the investigation or engaged in sexual conduct on duty was terminated. (Doc. No. 37-6 at 14-20; Doc. No. 37-14 at PageID # 891).

The Court finds that there is ample evidence in the record that Powell was terminated for violating multiple policies and that Defendants have established the absence of disputes of material fact regarding whether Powell's termination was motivated in part by his protected conduct and accordingly, summary judgment is appropriate on Powell's First Amendment retaliation claim.

**D. Equal Protection (Count V)**

Powell next asserts a claim against the City Defendants under 42 U.S.C. §1983 for violation of his equal protection rights on the grounds that he was terminated because of his race.

1. Racial Discrimination Claim

"To establish an equal protection claim against a public employer under § 1983, the plaintiff must show that the employer made an adverse employment decision with discriminatory

intent and purpose." *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000) (citation modified). Moreover, "[b]ecause both Title VII and § 1983 prohibit discriminatory employment practices by public employers, this court looks to Title VII disparate treatment cases for assistance in analyzing race discrimination in the public employment context under § 1983." *Id.* In order to establish a claim of discrimination based on circumstantial evidence, Plaintiff "must make a prima facie showing of discrimination under Title VII by demonstrating (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and (4) that a similarly-situated employee outside the protected class or classes was treated more favorably than he." *Dodd v. Donahoe*, 715 F.3d 151, 156 (6th Cir. 2013). "To qualify as similarly situated, the comparator employee must be similar in all of the relevant aspects." *Anderson v. Target Stores, Inc.*, No. 21-5620, at *11 (6th Cir. Apr. 7, 2022). Moreover, "[i]n the disciplinary context, to be deemed similarly-situated, the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Echols v. Ky. Just.*, No. 24-5715, 2025 LX 215273, at *4 (6th Cir. Mar. 24, 2025).

The City Defendants contend that Powell cannot show that any similarly-situated non-protected employee was treated more favorably than he was. Specifically, Defendants argue that Powell cannot show that he engaged in the same alleged conduct as Officers Magliocco, Holladay, and Schoeberl, who were suspended rather than terminated as a result of the investigation, as these officers were not found to have lied during the investigation. Moreover, Officer Durham, who is Caucasian, was found to not have committed any policy violations, and Hall, who was Caucasian,

was also terminated based on findings that she had lied during the investigation and interfered with the investigation.

In response, Powell contends that Officers Magliocco, Holladay, and Schoeberle were found guilty of sexual harassment, which is a comparably serious offense, and that while the evidence demonstrates that Powell engaged in sexual conduct while on City property, it fails to show that Powell was on duty at the time and a reasonable juror could find Defendants' formal reason for terminating Powell based on policy violations to be pretext for racial discrimination. Powell also argues that Caucasian employees Julie Wilson and Thomas Broeker failed to report a sexual affair and that one of them lied about it during an investigation and neither employee was terminated.[4]

However, construing the facts in the light most favorable to Powell, the Court finds that a reasonable juror could find that Officers Magliocco, Holladay, and Schoeberle were similarly situated to Powell and treated more favorably. Accordingly, Powell has established a prima facie case of racial discrimination.

"Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant, who must 'rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.'" *Levine v. DeJoy*, 64 F.4th 789, 797 (6th Cir. 2023) (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). "In satisfying that burden, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons.' Instead, '[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated

---

[4] The record establishes that Julie Wilson and Thomas Broeker were not police officers and were not subject to the LVPD's general orders or rules and regulations. Accordingly, the Court finds that Defendants have demonstrated an absence of disputes of material fact that Wilson and Broeker were not similarly situated to Powell as they were not subject to the same department policies.

against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Levine v. DeJoy*, 64 F.4th 789, 797 (6th Cir. 2023) (internal citations omitted).

Defendants argue that even if Powell could demonstrate a prima facie case of discrimination, Defendants had a legitimate, non-discriminatory reason for terminating him due to his violations of multiple policies within the City's employee handbook and rules of the LVPD General Order 300.01, including regarding sexual activity while on duty, conduct unbecoming of an officer, and lying during the investigation.

The Sixth Circuit has recognized that an employee's violation of company policy is a legitimate, non-discriminatory reason for termination. *Sokolnicki v. Cingular Wireless, LLC*, 331 F. App'x 362, 367 (6th Cir. 2009); *Chaves v. AT&T*, No. 3:13-CV-114-TAV-HBG, 2014 U.S. Dist. LEXIS 72252, at *13 (E.D. Tenn. May 28, 2014) (internal citation omitted) ("It is well established that an employee's violation of an employer's policy is a legitimate reason for termination.").

As Defendants have set forth a legitimate, nondiscriminatory reason for terminating Powell, the burden shifts back to Powell to demonstrate that this legitimate, nondiscriminatory reason was pretext. *See Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. at 248.

An employee can show pretext "by offering evidence that (1) the employer's stated reason had no basis in fact, (2) the stated reason did not actually motivate the employer, or (3) the stated reason was insufficient to warrant the adverse employment action." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014) (internal citation omitted).

Defendants argue that Powell cannot show there was no basis in fact for the policy violations he was accused of violating, as Powell admitted to being untruthful and engaging in sexual conduct on City property.

Here, Defendants point to evidence in the record that Powell engaged in sexual conduct on City property, attempted to obstruct the investigation by telling Hall to lie to investigators about their relationship, and was untruthful during the investigation in violation of city and department policies and that all of the officers found to have been untruthful during the investigation were terminated. Defendants also point to evidence that Patton interviewed Powell twice, obtained statements from multiple other officers regarding Powell's relationship with Hall, and relied on the written findings of the investigation in making the decision to terminate Powell's employment.

Accordingly, the Court finds that no genuine issue of material fact exists as to the issue of pretext, and summary judgment will be granted as to Powell's equal protection claim.

2. <u>Municipal Liability</u>

As part of Powell's equal protection violation claim, Powell also brings a municipal liability claim against the City based on his allegation that Cole is a final policymaker.

To show that the City is liable under Section 1983, "he must show both that he suffered an injury *and* that the alleged violation was caused by the City's policy or custom." *Novak v. City of Parma*, 33 F.4th 296, 309 (6th Cir. 2022) (emphasis in original). There are "four recognized theories of municipal liability: (1) an illegal or unconstitutional official policy, (2) ratification of illegal or unconstitutional actions by a policymaker, (3) illegal or unconstitutional actions stemming from a failure to train or supervise, and (4) a custom of tolerance or acquiescence of federal rights violations." *Gifford v. Hamilton Cnty.*, No. 24-5893, 2025 U.S. App. LEXIS 13293, *7 (6th Cir. May 30, 2025) (citation modified).

Here, Powell proceeds on a liability theory of ratification of illegal or unconstitutional actions by a final policymaker.[5] "Under this theory, municipal liability attaches when a

---

[5] While Powell argues in his response that "[n]ot just the Mayor, but also the City Administrator, the Director of Human Resources, the City Attorney, and the Chief of Police were all involved in this fiasco"

decisionmaker who possesses final authority to establish municipal policy with respect to the action approves the unconstitutional conduct." *Gifford*, 2025 U.S. App. LEXIS 13293, at *7 (citation modified).

Powell fails to demonstrate that Cole ratified any illegal or unconstitutional actions related to Powell's termination. While the record reflects that Cole made the ultimate decision to terminate Powell, for the reasons stated above, the Court finds that Defendants have provided ample evidence that Powell's termination was premised on the policy violations. Accordingly, Defendants have met their burden of showing an absence of disputed facts as to whether Powell's termination violated his constitutional rights, and summary judgment is appropriate on Powell's municipal liability claim.

### F. Libel (Count VI)

Powell brings a state law claim for libel against Cole and Patton for "falsely labeling the Plaintiff a perpetrator of sexual harassment in the public written reports and public personnel file (even though the investigation revealed that the relationship was consensual), by doing so with knowledge that the label was false or with reckless disregard for the truth, and by thus causing harm to his reputation." (Doc. No. 1 ¶ 82).

"A claim for common law defamation may be based upon written (libel) or spoken (slander) words." *Whiting v. City of Athens*, 699 F. Supp. 3d 652, 664 (E.D. Tenn. 2023) (citation modified). "Under Tennessee law, a plaintiff pursuing a defamation claim must show that: (1) a

---

and that "[c]ommon sense would dictate that at least one of them would have to be the final policymaker on investigation and discipline," Powell also argues that "the City had a policy or custom of not redacting any public records for any embarrassing information" and that "[i]f nothing else, the policy or custom caused the humiliating disclosure, regardless of whether the Mayor did." (Doc. No. 47 at 15-16). However, Powell's complaint identifies only Cole as a final policymaker and is void of allegations regarding the City's policy or custom. As correctly pointed out by Defendants, "[a] party cannot 'expand [his] claims to assert new theories' at summary judgment. *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007).

24

party published a statement; (2) with knowledge that the statement is false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Id.* (citation modified). Moreover, "a public official or a public figure may not recover in a defamation action…in the absence of proof of actual malice -- that is, with knowledge that it was false or with reckless disregard of whether it was false or not" and applies to "[t]he occupant of any position in any branch of government who exercises any public function…as to all conduct in his official capacity or as to any conduct that might adversely affect his fitness for public office, if he has or appears to the public to have, substantial responsibilities for or control over the conduct of governmental affairs." *Press, Inc. v. Verran*, 569 S.W.2d 435, 441 (Tenn. 1978) (citation modified).

Moreover, under Tennessee law, "[i]n order to support a claim for libel, a plaintiff carries the burden of proving that the statement was false and defamatory" meaning that "[t]he damaging words must be factually false. If they are true, or essentially true, they are not actionable, even though the published statement contains other inaccuracies which are not damaging. Thus, the defense of truth applies so long as the 'sting' (or injurious part) of the statement is true." *Ali v. Moore*, 984 S.W.2d 224, 229 (Tenn. Ct. App. 1998) (citation modified).

Here, Powell premises his libel claim on Patton's finding that Powell violated policy 9.2 of the City's Employee Handbook, which states as follows:

9.2 SEXUAL HARASSMENT

Sexual harassment, which is harassment directed at an individual because of his or her gender, is one form of harassment prohibited under this policy. The City of La Vergne will not tolerate sexual harassment and prompt action will be taken to investigate and resolve sexual harassment complaints. Sexual harassment occurs when submission to sexual advances is a condition of employment; when submission to or rejection of sexual advances is the basis of an employment decision; or when the conduct of another based on gender has unreasonably interfered with an affected person's work performance or created an intimidating,

25

hostile, or offensive work environment. Sexual harassment can be conduct directed toward a man or a woman by either sex and includes the following behavior: 1. Unwanted physical contact or conduct of any kind, including sexual flirtations, touching, advances or propositions; 2. Verbal harassment of a sexual nature, such as lewd comments, sexual jokes or references, and offensive personal references; 3. Demeaning, insulting, intimidating or sexually suggestive comments about or directed to an individual based on his or her gender; 4. The display in the workplace of demeaning, insulting, intimidating, or sexually suggestive objects, pictures or photographs; 5. Demeaning insulting, intimidating or sexually suggestive written, recorded or electronically transmitted materials (such as email, instant message, and Internet materials)

(Doc. No. 37-9 at 57). The record establishes that Powell sent nude photographs of female officers to another co-worker in violation of this policy. (Doc. No. 37-14 at PageID # 897-898). Patton also testified during his deposition that sexual conduct that occurred on City property violated this policy regardless of whether the conduct was wanted. (Doc. No. 37-15 at PageID # 918). Moreover, Hall informed Patton during the investigation that she felt pressured by Powell to continue the relationship. (Doc. No. 37-4 at 47) ("Well I mean it's like throughout the whole time we were doing it, I was always kind of afraid to end things with him or I'd go back and he kind of pressured me into coming back [inaudible]. It would kind of change the way we work together and he wouldn't make like direct threats or anything but especially once he was like warning me of the IA and telling me about an IA and everything. Uh, things he would say like, if I didn't deny it like it was more of indirect threats, if anything."); (*Id.*) ("It was just like '[t]hings aren't going to end good if this happens, I'll lose my wife and kids and job, it's on you. You have to live with that.' And like he knows where I live and [inaudible] it's just more concerning than anything. It's like [inaudible] my house one day and see his truck at my house."); (Doc. No. 37-4 at 48) ("But throughout the whole like us being together thing every now and then he wouldn't like threaten me, I just felt like I was more [inaudible] and things just because of his position and every now and then if something happened at work he'd be like 'Don't worry about it.' That was kind of it

26

and it was like [inaudible] So, it's like he never played the like 'I'm a Sergeant.' Or anything like that but it was more like-I-I didn't want to ask.").

Accordingly, the Court finds that the record contains evidence demonstrating that Powell violated Policy 9.2 and that the City relied on Patton's finding that Powell violated this policy when deciding to terminate him. As a result, Powell's libel claim fails as a matter of law, and summary judgment is appropriate on the libel claim.[6]

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

[6] Powell concedes in his response that he is withdrawing his Fourth Amendment claim. Moreover, as the Court has determined that summary judgment is appropriate on other grounds, it is not necessary to address Defendants' qualified immunity arguments.